**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONTRELL STEPHENSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-12411 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., and | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Montrell Stephenson filed for bankruptcy, and eventually received a discharge. He expected that the discharge would eliminate all of his debts, and scrub them off his credit reports. He wanted a clean slate and a fresh start.

Years after the discharge, Stephenson discovered that Experian and Equifax continued to list three of his pre-petition debts as outstanding. Stephenson believed that those debts were discharged in bankruptcy. So he demanded that the credit reporting agencies remove the debts from his reports.

Experian and Equifax investigated the issue, and concluded that they got it right after all. As it turns out, Stephenson did not disclose those debts in his bankruptcy case. That is, Stephenson did not include those debts in the schedule of his debts that he filed with the bankruptcy court.

The omission means that Stephenson didn't receive a discharge for those debts. And without a discharge, the debts remained outstanding.

Unsatisfied, Stephenson sued Experian and Equifax under the Fair Credit Reporting Act, bringing five claims. Each claim rests on the notion that the agencies inaccurately reported those debts as outstanding. Experian and Equifax moved to dismiss, and filed a large collection of material from the docket in the bankruptcy case.

Based on the bankruptcy filings, it is clear that Stephenson filed an inaccurate complaint about inaccurate reporting. The complaint is more ironic than meritorious.

For the following reasons, the motions to dismiss are granted.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In 2017, Montrell Stephenson filed for Chapter 13 bankruptcy. *See* Cplt., at ¶ 13 (Dckt. No. 1). A few years later, he converted his bankruptcy case to Chapter 7, and the bankruptcy court issued a discharge order in February 2022. *Id.* at ¶¶ 14–15. Stephenson thought that he was debt-free, and expected his credit reports to say as much.

To Stephenson's surprise, Experian and Equifax reported him as having three outstanding debts after his bankruptcy. *Id.* at ¶¶ 16–17 (Dckt. No. 1). Specifically, Experian and Equifax reported Stephenson as having "charge-offs" on accounts with NIH Federal Credit Union, Lending Club, and TD Bank/Target. *Id.* at ¶ 17.

A charge-off basically means that a creditor doesn't think that it is going to get repaid. "[T]o 'charge off' an account means 'to treat [an account] as a loss or expense because payment is unlikely; to treat as bad debt.'" *Hollomon v. Chicago Patrolmen's Fed. Credit Union*, 2021 WL 949341, at *1 n.3 (N.D. Ill. 2021) (quoting *Charge Off*, BLACK'S LAW DICTIONARY (11th ed. 2019)) (alteration in original).

The agencies reported those debts on Stephenson's reports from April 2022 through July 2025. *Id.* Stephenson believed that the reports were inaccurate, so he reached out to the reporting agencies and asked for a correction.

In July 2025, Stephenson submitted dispute letters to Experian and Equifax. *Id.* at ¶ 19. He wanted the agencies to report that his bankruptcy discharged those three debts. *Id.* at ¶ 20.

Later that month, Equifax responded to his dispute letter. It informed Stephenson that its credit reporting was "verified as accurate." *Id.* at ¶ 21. In its August credit report, Equifax continued to list the disputed accounts as "charged-off." *Id.* at ¶ 22.

Experian received Stephenson's letter, but refused to "process the dispute" because of "suspicious mail." *Id.* at ¶ 55. The complaint doesn't explain what aroused Experian's suspicion, but Stephenson faults them for not "making any reasonable attempt to verify [his] identity." *Id.* Experian continued to report the disputed accounts as "charged-off" after receiving Stephenson's letter. *Id.* at ¶ 23.

In the months that followed, Stephenson had trouble getting credit from potential lenders. The complaint gives two specific examples.

In August 2025, Discover Bank denied Stephenson's application for a credit card. *Id.* at ¶ 24. Discover Bank's denial mentioned Stephenson's history of "[s]erious [d]elinquency" in paying off his debts. *Id.* That same month, Justice Federal Credit Union denied Stephenson's

application for a $10,000 loan.  *Id.* at ¶ 25.  The credit union also cited Stephenson's "[d]elinquent past or present credit obligations" as a reason for denying him credit.  *Id.*

Stephenson blames Experian and Equifax for his credit denials.  He also says that their allegedly inaccurate reporting caused other injuries, too (*i.e.*, reputational harm, pain and suffering, and so on).  *Id.* at ¶ 27.

So, Stephenson sued each agency under the Fair Credit Reporting Act.  He brings five claims, covering three provisions of the Act.  In Counts I and III, Stephenson says that Experian and Equifax violated section 1681i by failing to reasonably reinvestigate the accuracy of their credit reports.

In Counts II and IV, Stephenson alleges that the agencies violated section 1681e for failing to follow reasonable procedures to assure maximum possible accuracy in his consumer reports.

In Count V, Stephenson sues Experian only.  He claims that Experian violated section 1681h by failing to verify his identity in response to his July 2025 dispute letter.

Experian and Equifax filed motions to dismiss.

### Analysis

Before diving in, this Court needs to do a little housekeeping and tidy things up.  By the look of things, Stephenson's complaint is duplicative.  Specifically, Counts I and III are duplicative of one another, and Counts II and IV are duplicative, too.

Counts I and III both allege that Experian and Equifax violated section 1681i by failing to reasonably reinvestigate Stephenson's July 2025 dispute letter.  *Compare* Cplt., at ¶¶ 32–38 (Dckt. No. 1) *with id.* at ¶¶ 44–47.  Each claim is against both defendants.  The counts cover the same conduct.  It's the same story told twice.

Stephenson made the same error in Counts II and IV.  Those counts cover Experian and Equifax's failure to maintain reasonable procedures in reporting credit information.  *Compare id.* at ¶¶ 39–43 *with id.* at ¶¶ 48–53.  Once again, each claim is against both defendants, and the counts describe the same conduct.

Claims can factually overlap, and cover much of the same ground as other claims in a complaint.  *See* Fed. R. Civ. P. 8(d).  But claims cannot be duplicative.

Claims must "require different proof or seek different relief" from one another.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Willis*, 2019 WL 13470923, at *6 (N.D. Ill. 2019). "Claims are duplicative if they stem from identical allegations, are decided under identical legal standards, and for which identical relief is available."  *Gallegos v. Weiler, Inc.*, 2026 WL 636784, at *2 (N.D. Ill. 2026).

Stephenson's complaint repeats the same claims with the same facts against the same defendants.  So, Counts III and IV are dismissed as duplicative of Counts I and II, respectively. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . matter.");

3

*see also DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) ("It is well-settled that duplicative counts in a complaint may be properly dismissed."); *Hill v. Harrington*, 2019 WL 4014079, at *2 (N.D. Ill. 2019) ("It is true that district courts have the authority to strike duplicative counts from complaints.") (collecting cases).

I.       **The Claims about Reasonable Procedures and Reasonable Reinvestigation**

Congress enacted the Fair Credit Reporting Act "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA tries to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

The FCRA imposes a number of duties on consumer reporting agencies. Two of those duties are relevant here.

For starters, section 1681(e) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report. *See* 15 U.S.C. § 1681e(b).

But sometimes mistakes happen, and that's when section 1681i comes into play. If a consumer takes issue with the completeness or accuracy of information in a report, then consumer reporting agencies must look into it and take appropriate action. Specifically, reporting agencies must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *See* 15 U.S.C. § 1681i.

Stephenson brought claims against Experian and Equifax under both provisions. Count I alleges a violation of section 1681i (requiring a reasonable reinvestigation), and Count II alleges a violation of section 1681e (requiring reasonable procedures).

A necessary predicate of each claim is the existence of an inaccuracy. After all, if a credit report is accurate, then a consumer has no reason to bring a claim and throw stones at the reporting agencies.

To bring a claim, Stephenson must allege that "something in his credit report was inaccurate, or at least misleading," in order to "show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b), or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i." *See Johnson v. TransUnion, LLC*, 524 F. App'x 268, 270 (7th Cir. 2018) (internal citations omitted) (collecting cases); *see also Handrock v. Ocwen Loan Servicing, LLC*, 216 F. Supp. 3d 869, 873 (N.D. Ill. 2016) ("To state a claim under either § 1681e(b) or § 1681i, Plaintiffs must allege that their credit reports contained inaccurate information.") (collecting cases).

"A threshold requirement for claims under both sections is that there must be an inaccuracy in the consumer's credit report." *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021); *see also Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th

4

Cir. 2019) ("Equifax cannot be liable as a threshold matter if it did not report inaccurate information."). If there's no inaccuracy, there's no claim.

The need for an inaccuracy is the beginning and the end of this case. Experian and Equifax argue that the credit reports weren't inaccurate at all. In fact, they argue that they hit the target and got it right.

Specifically, both agencies argue that they accurately reported Stephenson's debts with NIH Federal Credit Union, Lending Club, and TD Bank/Target. *See* Experian Mem., at 4–7 (Dckt. No. 23-1); Equifax Mem., at 4–6 (Dckt. No. 22). In their view, the debts remain outstanding.

The agencies point out that Stephenson didn't include those three debts in his schedule of debts in his bankruptcy case. And since Stephenson didn't schedule those debts, the bankruptcy court's discharge order didn't cover them.

In response, Stephenson repeats his claim that the reporting agencies inaccurately reported the status of those three debts. *See* Pl.'s Resp., at 3 (Dckt. No. 25). He says that the "discharge order presumptively covered Plaintiff's unsecured consumer debts." *Id.*

This Court took a close look at the schedules and the orders in the underlying bankruptcy case. That's completely fair game, even at the motion-to-dismiss stage.

When ruling on a motion to dismiss, a court can consider not only "the complaint itself," but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013).

Here, Stephenson's bankruptcy proceedings are both "critical to the complaint and referred to in it[.]" *See Phillips*, 714 F.3d at 1019. That's the whole point of the case – Stephenson alleges that the discharge order wiped away his debts.

Plus, the bankruptcy filings are fair game for another reason. This Court can take judicial notice of court filings, including filings in bankruptcy cases. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

"To the extent an exhibit or a judicially noticed court document contradicts the amended complaint's allegations, the exhibit or court document takes precedence." *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 934 (N.D. Ill. 2012) (citing *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007)).

A review of the bankruptcy filings confirms a glaring omission. Stephenson didn't schedule any of the three creditors in his initial Chapter 13 petition. *See* Chapter 13 Petition (Dckt. No. 23-2, at 18–22 of 59). That is, Stephenson didn't list NIH Federal Credit Union, Lending Club, or TD Bank/Target as creditors in his bankruptcy petition.

While converting his bankruptcy to Chapter 7, Stephenson filed an amended schedule. *See* Amended Bankruptcy Schedule (Dckt. No. 23-4, at 10–16 of 25). And in his amended

schedule, he did not list any of those three creditors. *Id.* None of the three creditors appeared on Stephenson's December 2021 Creditor Matrix, either. *See generally* Creditor Matrix (Dckt. No. 22-2).[1]

In a Chapter 7 bankruptcy, a court's discharge order covers most debts, but not all debts. Section 523 of the bankruptcy code creates exceptions to a discharge. "*Except as provided in section 523 of this title*, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ." *See* 11 U.S.C. § 727(b) (emphasis added); *see also Laura v. Experian Info. Sols., Inc.*, 2023 WL 2646818, at *2 (N.D. Ill. 2023) ("Although most pre-petition debts are discharged in a Chapter 7 bankruptcy, 11 U.S.C. § 523 provides exceptions to the rule.").

Under section 523, a discharge order typically does not cover debts unless they appear on the list of debts in a bankruptcy schedule. Section 523 "does not discharge an individual debtor from any debt . . . neither listed nor scheduled . . . ." *See* 11 U.S.C. § 523(a)(3). "Generally, a debt not listed by the petitioner on the bankruptcy schedule is not discharged." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1198 n.7 (7th Cir. 2021) (citing 11 U.S.C. § 523(a)(3))

Section 523's baseline rule is simple. The discharge covers whatever debts are on the list of debts. If a debtor does not include a specific debt in the list of debts in the bankruptcy case, the debt won't be covered by the bankruptcy discharge order.

That's the general rule, but there is an exception. That is, the exception has its own exception. A debt that isn't listed or scheduled *will* be discharged if the "creditor had notice or actual knowledge of the case in time for such timely filing." *See* 11 U.S.C. § 523(a)(3)(A)–(B).

"[U]nder subsection 523(a)(3), debts not timely listed in the debtor's bankruptcy schedules are not discharged unless the creditor had actual knowledge of the bankruptcy case in time to file a proof of claim." *Laura*, 2023 WL 2646818, at *2; *see also* 4 COLLIER ON BANKRUPTCY ¶ 523.09 (16th ed. 2026) ("A debt is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect its rights, unless the creditor had notice or actual knowledge of the case."). A debtor bears "the burden of proving notice or actual knowledge" under section 523. *See In re Leventhal*, 481 B.R. 409, 416 (N.D. Ill. 2012) (collecting cases), *aff'd*, 2013 WL 599520 (7th Cir. 2013).

Putting all of that together, the general rule is that a discharge covers all debts before the date of filing the petition, except as provided in section 523. *See* 11 U.S.C. § 727(b). Section 523 requires a debtor to identify all debts in a bankruptcy schedule, and any debt that isn't on the schedule of debts is not discharged. *See* 11 U.S.C. § 523(a)(3). But that rule doesn't apply if the

---

[1] In his amended schedule, Stephenson listed $3.45 from an NIH Federal Credit Union checking account. He listed the checking account as exempt property, meaning property that he didn't want a Chapter 7 trustee selling to pay his creditors. *See* Amended Bankruptcy Schedule (Dckt. No. 23-4, at 7 of 25); *see also* 11 U.S.C § 522. He didn't list any debts he owed to NIH Federal Credit Union on his schedules. Stephenson listing NIH Federal Credit Union as the host of his checking account is very different than him listing the credit union as a creditor that he owed debt. Stephenson listed the $3.45 in the checking account as property he wanted to keep, not as debt he wanted discharged.

creditor had notice or actual knowledge of the bankruptcy, and thus had an opportunity to protect its rights. *See* 11 U.S.C. § 523(a)(3)(A)–(B).

Here, Stephenson didn't list any debts with NIH Federal Credit Union, Lending Club, or TD Bank/Target in his schedules. And Stephenson doesn't allege that any of those creditors knew or had notice about his bankruptcy.[2] So, the discharge order didn't cover those debts.

In a nutshell, Stephenson didn't include those debts in his bankruptcy schedule, so the debts weren't discharged. And because the debts weren't discharged, Experian and Equifax accurately reported Stephenson's debts. As it turns out, the credit reports were accurate after all.

Without an inaccuracy, Stephenson's claims under sections 1681e and 1681i fail as a matter of law. *See Laura*, 2023 WL 2646818, at *3 ("[T]he debt had not been discharged at the time Experian reported it because Laura never amended her bankruptcy schedules to include Midwest as a creditor. As a result, Experian could not have listed inaccurate information on her credit file and did not cause Laura to suffer an injury under the FCRA."); *see also Walton*, 761 F. App'x at 591 ("Equifax cannot be liable as a threshold matter if it did not report inaccurate information."); *Chuluunbat*, 4 F.4th at 567 (same).[3]

Stephenson's claim under section 1681e was doomed to fail, even if he had identified a mistake based on a misreading of the bankruptcy discharge order. The Seventh Circuit recently held that credit reporting agencies typically do not violate section 1681e when they inaccurately

---

[2] It doesn't matter whether *Experian and Equifax* had notice or actual knowledge of Stephenson's bankruptcy case. Section 523's exception applies to a "creditor" with "notice or actual knowledge," not a credit reporting agency. *See* 11 U.S.C. § 523(a)(3)(A)–(B); *see also Laura*, 2023 WL 2646818, at *3 ("But whether Experian – the credit reporting agency, not the creditor – had notice of the bankruptcy is irrelevant under the statute.").

[3] In limited circumstances, "there is an equitable rule in this circuit permitting a petitioner to amend its schedules post-discharge to include omitted debts." *See Persinger*, 20 F.4th at 1198 n.7. This Court has serious doubts about the province of this rule. "Courts lack an 'equitable' power to contradict the bankruptcy statutes and rules." *Netzer v. Off. of Law. Regul.*, 851 F.3d 647, 649 (7th Cir. 2017) (citing *Law v. Siegel*, 571 U.S. 415 (2014)). This rule grafts an atextual addition to section 523, whose text only allows discharging unlisted debts if the creditor had notice or knowledge of the bankruptcy case. *See* 11 U.S.C. § 523(a)(3). But even if this Court applied the equitable rule to this case, it doesn't save Stephenson's claim. The rule *could* explain why he might have a claim despite not listing the three disputed debts in his bankruptcy schedules. But it doesn't help Stephenson because hasn't actually availed himself of this rule. That is, Stephenson hasn't gone to the bankruptcy court and asked permission to untimely amend his schedules. He doesn't allege that he used this rule to schedule the three disputed accounts post-discharge. He simply argues that the rule exists, but he doesn't demonstrate that the rule *applies*. *See, e.g.*, Pl.'s Resp., at 6–9 (Dckt. No. 25). If Stephenson "wants to reopen his bankruptcy to amend his schedule to list" these three accounts, "he must look first to the bankruptcy court." *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 968 (7th Cir. 1996). "[I]t was his responsibility, not the bankruptcy or district courts', to give [creditors] notice of his bankruptcy and to properly list [his creditors] on his schedule of creditors." *Id.*; *see also Laura*, 2023 WL 2646818, at *2–3 (analyzing the equitable rule, but holding that it didn't apply under *Gagan*); *In re Leventhal*, 481 B.R. at 416 ("Debtors are required to file a creditor list containing the names and addresses of each creditor to be listed on their bankruptcy schedules as prescribed by the official bankruptcy forms.") (citing Fed. R. Bankr. P. 1007(a)(1)).

report a debt as not discharged in bankruptcy. *See Sykes v. Experian Info. Sols., Inc.*, 2026 WL 2198314 (7th Cir. 2026). Most of the time, mistakes of law don't give rise to a claim.

In *Sykes*, the plaintiff defaulted on her mortgage loan, so she executed a deed in lieu of foreclosure. *Id.* at *1. Two years later, she filed for Chapter 13 bankruptcy, and received a general discharge. *Id.*

The discharge order noted that "[m]ost debts are covered by the discharge, but not all." *See Sykes*, 2026 WL 2198314, at *1. The order also warned that "[s]ome debts are not discharged." *Id.* The order did not refer to the particular debt listed in plaintiff's credit report that she disputed, meaning the mortgage loan. *Id.* at *1–2.

Experian reported her deed in lieu of foreclosure and bankruptcy discharge on her credit report. But Experian continued reporting her mortgage account as carrying a past due balance. *Id.* at *1. So, the plaintiff sued, alleging that Experian violated section 1681e by inaccurately reporting that her mortgage account had a balance. *Id.* In her view, the discharge order covered the mortgage loan.

The Seventh Circuit held that the complaint failed to state a claim under section 1681e. "[A]ny alleged inconsistency" in her credit report "would only be uncovered through legal analysis outside of Experian's purview." *Id.* at *3.

Credit reporting agencies "must report facts that are ascertainable from available records (including legal documents) but have no obligation to discern the meaning of those documents. That is, the FCRA does not require [credit reporting agencies] to resolve legal disputes, interpret contracts or statutes, or determine the validity or enforceability of debts." *Id.*

"Stated differently, the question is whether it should have been clear from the objectively verifiable information available to Experian that the report was inconsistent or inaccurate. The answer is no." *Id.* The effect of a general bankruptcy discharge on a specific debt "is not an objective fact apparent from the face of the discharge order." *Id.* at *4.

The Seventh Circuit reached its conclusion in large part because the discharge "order [was] silent as to the mortgage account and it expressly caution[ed] that determining whether an account is covered under the discharge order could require legal analysis." *Id.*

The "discharge status" of the mortgage loan was "not an objective fact apparent from the face of the discharge order." *Id.* The meaning of the discharge order "requires legal analysis," so "Experian was not required to resolve it." *Id.* "The FCRA does not require CRAs to make legal determinations to confirm the accuracy of the information they include in consumer credit reports." *Id.*

That's similar to the situation at hand. Stephen received a general discharge order that has identical language. The discharge order itself explained that "[m]ost debts are covered by the discharge, but not all." *See* Discharge Order, at 1 (Dckt. No. 23-5).

Stephenson's order listed examples of "debts that are not discharged," including "some debts which the debtors did not properly list." *Id.* at 2. And the order explained that "the law is

complicated, you should consult an attorney to determine the exact effect of the discharge in this case." *Id.*

Stephenson wants Expedia and Equifax to figure out the effect of his order on specific debts that weren't listed anywhere in his bankruptcy filings. "That is exactly the type of determination" the Seventh Circuit has "held is beyond the scope of a [credit reporting agency's] responsibility under § 1681e(b)." *See Sykes*, 2026 WL 2198314, at *4.

Expedia and Equifax did not have a duty to wade through the bankruptcy filings and figure out the effect of Stephenson's general discharge order on specific debts.

For those reasons, Defendants' motions to dismiss Counts I and II are granted.

## II. The Claim about Proper Identification

In Count V, Stephenson claims that Experian violated section 1681h(a)(1). If readers are hungry for facts, they'll starve.

The factual allegations are meager, spanning only two paragraphs. *See* Cplt., at ¶¶ 54–55 (Dckt. No. 1). Basically, the complaint alleges that Stephenson sent a dispute letter to Experian on July 8, 2025. *Id.* at ¶ 54. And Experian thought that the letter was suspicious.

"Experian refused to process the dispute, citing 'suspicious mail,' without making any reasonable attempt to verify Plaintiff's identity." *Id.* at ¶ 55. In the header for Count V, Stephenson describes the claim as a "Failure to Verify Identity Prior to Refusing Dispute." *Id.* at 10 of 13.

Section 1681h(a)(1) provides that "[a] consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification." *See* 15 U.S.C. § 1681h(a)(1).

Under the provision, "[c]onsumer reporting agencies also are required to safeguard consumers' personal information by requiring consumers to 'furnish proper identification' in order to obtain disclosures." *See Alexis v. Experian*, 2018 WL 11470564, at *3 (N.D. Ill. 2018).

So, section 1681h(a)(1) imposes a narrow duty on credit reporting agencies. If a consumer asks for certain disclosures, a credit reporting agency must first require that they provide proper identification.

It's hard to see how Stephenson can bring a claim under that provision. The statutory text requires reporting agencies to protect consumers by requiring proper identification. The goal is to avoid providing too much information, not too little information.

Stephenson doesn't allege that Experian provided his information to him without first asking him to verify who he was. Instead, Stephenson alleges that Experian *didn't* provide information because Experian thought that the mail didn't pass the smell test.

By the sound of things, the walls were too high, not too low.

Stephenson seems to allege that Experian had a duty to investigate his identity. But that's not what the statute says. The text requires a reporting agency to exercise care, and make sure that they don't provide information without first verifying who is asking for the information.

The complaint does not allege that Experian provided his personal financial information to him (or anyone else) without first verifying his identity. So Count V is dismissed.

## III.    Attorney's Fees

Stephenson's claims have hit the end of the road. But the dismissal does not necessarily mean that the case has reached the finish line. Equifax requested an award of attorney's fees. *See* Experian Mem., at 6–7 (Dckt. No. 22).

The Fair Credit Reporting Act authorizes courts to award attorney's fees when a plaintiff files a complaint in bad faith or for purposes of harassment. In fact, it does so twice.

Section 1681n(c) provides: "Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." *See* 15 U.S.C. § 1681n(c).

A neighboring provision, section 1681o(b), says essentially the same thing. "On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." *See* 15 U.S.C. § 1681o(b).

"To prove 'bad faith' under §§ 1681n(c) and 1681o(b) a party must 'show either that the party subjectively acted in bad faith – knowing that he had no viable claim – or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Pappas v. Experian Info. Sols.*, 2017 WL 3052978, at *1 (N.D. Ill. 2017) (St. Eve, J.) (quoting *Ryan v. Trans Union Corp.*, 2001 WL 185182, at *5 (N.D. Ill. 2001)); *see also Aldaco v. Rentgrow, Inc.*, 2019 WL 8554341, at *2 (N.D. Ill. 2019).

Under the Fair Credit Reporting Act, a court can order fees against a party, but not the party's counsel. *See Lewis v. Trans Unions LLC*, 2006 WL 2861059, at *3 (N.D. Ill. 2006); *see also Ryan*, 2001 WL 185182, at *5. That's not exactly what the text says. The text explains who a court can award attorney's fees *to*, not who a court can award fees *against*. Even so, courts in this district have compared this statute to comparable provisions in other statutes, and have reached the conclusion that the FCRA only allows an award of fees against a party, not a lawyer.

Imposing attorney's fees against a party is "entirely appropriate" when the party "knew of the falsity and baselessness of [the] allegations in the complaint when it was failed." *See Lewis*, 2006 WL 2861059, at *4.

Courts have ordered opposing parties to pay attorney's fees when direct evidence of a party's bad faith exists. *See, e.g.*, *Pappas*, 2017 WL 3052978, at *3. In *Pappas*, a plaintiff

10

blamed Experian's credit report for his failure to secure a mortgage. But Experian provided evidence that mortgage lenders told the plaintiff that they denied him mortgages because of his previous foreclosures, not his credit reports. *Id.* So, the court ordered the plaintiff to pay attorney's fees under sections 1681n(c) and 1681*o*(b). *Id.*

That's not the case here. Bankruptcy is difficult, and the Court understands how Stephenson may have believed that he had a basis to bring these claims. After all, the discharge order itself explained that "[m]ost debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed." *See* Discharge Order, at 1 (Dckt. No. 23-5).

True, the order listed examples of "debts that are not discharged," including "some debts which the debtors did not properly list." *Id.* at 2. But even that warning said that only "*some*" unlisted debts would not be discharged. And the order explained that "the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case." *Id.*

So, Stephenson could be forgiven for assuming that the three disputed debts were discharged.

This Court has a much harder time understanding how Plaintiff's counsel could bring these claims in good-faith. Counsel should have known the general rule that unlisted debts aren't discharged. *See* 11 U.S.C. § 523(a)(3). And counsel should have known that Stephenson didn't have a workaround to section 523's baseline rule.

Plus, counsel raised several frivolous and non-serious arguments in her briefs. For example, counsel represented that "[t]he Seventh Circuit has made clear that judicial notice cannot be used to contradict well-pleaded allegations at the Rule 12(b)(6) stage." *See* Pl.'s Resp., at 4 (Dckt. No. 24).

That's patently false, and upside down. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls."); *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) ("In conducting our review, we must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.") (cleaned up).

Counsel also filed a sur-reply that argued Experian cited *Laura v. Experian Information Solutions, Inc.*, 2023 WL 2646818 (N.D. Ill. 2023), "as substantive authority for the first time" in its reply brief. *See* Pl.'s Sur-reply, at 2 (Dckt. No. 31).

That's wrong. Experian cited *Laura* in its helpful memorandum in support of its motion, and did so on the first page. *See* Experian's Mem., at 1 (Dckt. No. 23-1). It also cited *Laura* on pages four, five, and six of its memorandum. *Id.* at 4–6.

In that same sur-reply, Plaintiff's counsel argued that "Experian's reply asserts for the first time that Plaintiff's debts were 'not discharged as a matter of law' because they were allegedly unscheduled, relying on new authority and new legal reasoning. The opening brief did

11

not cite any statue, rule, or authority supporting this legal conclusion." *See* Pl.'s Sur-reply, at 1 (Dckt. No. 31).

Again, that argument is dead-wrong, and downright confounding. Experian spent nine pages arguing that Stephenson's debts weren't discharged because he didn't schedule the debts. Experian extensively cited Stephenson's bankruptcy filings and case law in support of its well-reasoned memorandum. Experian's (and Equifax's) theory of the case is that Stephenson's debts weren't discharged, and it made that abundantly obvious in its very first brief.

The Court could go on and on. Counsel raised frivolous, irrelevant, and outright incorrect arguments in its filings.

Even so, this Court cannot order counsel to pay Experian's fees under the Fair Credit Reporting Act. That statute authorizes a court to award attorney's fees against a party, not counsel.

Still, the statute is not the only tool in the Court's toolbox. When it comes to improper conduct of attorneys, district courts have a toolbox the size of a Home Depot.

Rule 11 is the most obvious tool in the shed. That rule contemplates that an attorney will have a chance to weigh-in before a court takes action. So, within two weeks of entry of this order, Plaintiff's counsel must show cause why this Court should not impose sanctions under Rule 11, including a possible award of attorney's fees. Counsel must address all of the points flagged in this opinion.

## IV. Leave to Amend

Rule 15(a)(2) provides that a district court "should freely give leave" to amend "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Even so, an opportunity to amend a complaint is not a sure thing.

Futility is a classic example of when amending a complaint makes little sense. *See, e.g., Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

Here, the bankruptcy filings demonstrate that Stephenson has no claim against Experian and Equifax. He didn't list the disputed debts on his schedules, so the debts weren't discharged in bankruptcy. Since the debts weren't discharged, Experian and Equifax didn't create inaccurate credit reports.

The same conclusion applies to the claim about proper identification. Stephenson invokes a statute that requires reporting agencies to obtain proper identification before providing information. But the complaint doesn't allege that Experian disclosed his information too freely, without taking precautions. If anything, it alleges the opposite – Experian was too protective of his information.

Based on the allegations, amending the complaint would be futile, so this Court will not grant Stephenson leave to amend.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted.

Date:  August 3, 2026

Steven C. Seeger
United States District Judge

13